CASE No. 908.

## STATE v. GLENN.

1. Under Article IV., Section 1, of the constitution of this state, it is competent for the legislature to confer upon trial justices jurisdiction of the cases mentioned in Article IV., Section 22, including bastardy. These sections, together with Article I., Section 19, construed.

2. No jurisdiction to hear and determine cases of bastardy has been conferred by law upon trial justices. Under Chapter LXVIII., of general statutes, original jurisdiction in such cases belongs to the Courts of General Sessions.

3. The grant to an inferior court out of the jurisdiction previously exercised by a court of general original jurisdiction, cannot operate as an exclusion of such superior court, unless made so by the terms of the grant.

4. The Court of General Sessions is not excluded by the constitution from taking jurisdiction in cases of bastardy.

5. One convicted of bastardy cannot be sentenced to imprisonment in default of giving bond for the maintenance of the bastard child.

Before NORTHROP, J., Newberry, May, 1876.

Indictment for bastardy. Defendant was convicted and sentenced, and appealed upon the several grounds considered in the opinion of the court; but counsel for both appellant and respondent argued only the last ground, viz., whether the alternative sentence of imprisonment was within the power of the court.

*Messrs. Pope & Fair,* for appellant.

*Mr. Solicitor Ball,* contra.

August 31st, 1880. The opinion of the court was delivered by

WILLARD, C. J. The defendant was arrested under a warrant issued by a trial justice upon a charge of bastardy. Having traversed the charge, the case was transmitted to the General Sessions, and an indictment therefor found, and conviction had under such indictment, and sentence pronounced by the court under Chapter LXVIII. of the general statutes, p. 376. The first question presented by the grounds of appeal is whether the constitution has granted exclusive original jurisdiction in cases of bastardy to justices of the peace so as to exclude trial justices from assuming such jurisdiction. If the conclusion is reached that it was competent for the general assembly to confer on trial justices original jurisdiction in cases of bastardy, then it will be necessary to inquire whether, in the present instance, such jurisdiction has been conferred. If it should appear that no such

grant of jurisdiction has, in fact, been made to trial justices, it will become necessary to· inquire whether the Court of General Sessions is competent under the constitution and the laws to assume such jurisdiction. If so, whether such jurisdiction was properly assumed in the present case, and whether the judgment of the Court of General Sessions, appealed from, is in conformity with law.

The first of these inquiries involves the question whether a trial justice can exercise the jurisdiction conferred by Section 22, Article IV. of the constitution, consistently with its provisions. That section provides "that justices of the peace, individually, or two or more of them jointly, as the general assembly may direct, shall have original jurisdiction in cases of bastardy," &c. If this is to be regarded as a grant of exclusive jurisdiction, then trial justices are excluded from exercising the jurisdiction here conferred upon justices of the peace. There are no words in the constitutional grant importing exclusive jurisdiction, and if that conferred is of that nature, it must arise by implication. If the grant of jurisdiction, in case of bastardy, is exclusive, then all the jurisdiction conferred upon justices of the peace by Section 22, Article IV., must be regarded as of the same nature, and, in that case, trial justices, and other inferior courts, must be excluded from participating in such jurisdiction. The jurisdiction conferred on justices of the peace by that section embraces, in addition to cases of bastardy, actions *ex contractu* and *ex delicto*, and for fines and forfeitures, under limitations, as it regards the amount involved, prosecutions for assault and battery and other penal offences less than felony, punishable by fines only. To this enumeration is added, by Section 19, Article I., offences less than felony, where the penalty does not exceed a fine of $100 and imprisonment for thirty days. To hold, then, that the jurisdiction conferred on justices of the peace by Section 22, Article IV., is exclusive, would be equivalent to holding that the entire jurisdiction proper to the inferior courts of this state is vested exclusively in justices of the peace, except that over offences punishable by fine not exceeding $100 and imprisonment not exceeding thirty days. Such a conclusion would be inconsistent

with a fair construction of the provisions of Section 1, Article IV., as will hereafter appear.

It is necessary, then, to inquire whether a proper construction of Section 1, Article IV., is consistent with the conclusion that the grant to justices of the peace in Section 22, Article IV., is exclusive in its nature; for, if it is not consistent, clearly no implication is admissible having the effect to place the language of Section 22 in antagonism with that of Section 1 of the same article of the constitution.

Section 1, Article IV., is as follows: "The judicial power of this state shall be vested in a Supreme Court, in two Circuit Courts, to wit, a Court of Common Pleas, having civil jurisdiction, and a Court of General Sessions, with criminal jurisdiction only, in Probate Courts, and in justices of the peace. The general assembly may also establish such municipal and other inferior courts as may be deemed necessary." It must be conceded that this grant of judicial power is exhaustive, so that no other courts than those named, or otherwise provided for, can be constitutionally created by the legislature. The constitution recognizes the distinction between the superior and inferior courts of law, as was held in *State* v. *Fillebrown*, 2 *S. C.* 404, and, accordingly, must be regarded as recognizing the distinction involved in the application of the terms *superior* and *inferior* to the respective jurisdictions conferred upon such courts. Regarding then the whole inferior jurisdiction of the state as vested, either actually or contingently, by the section in question, it remains to inquire what disposition is made by Section 1, Article IV., of that inferior jurisdiction. The effect of the clause of Section 1 that provides that "the general assembly may also establish such municipal and other inferior courts as may be deemed necessary," is the same as if the preceding clause had read *and in justices of the peace and in municipal and other inferior courts as the general assembly may deem necessary.* In the event of the creation of *municipal and other inferior courts*, their jurisdiction must of necessity embrace part of that intended to be conferred on justices of the peace, and, therefore, the grant to justices of the peace in Section 1, Article IV., cannot be read as exclusive. This section must then be read as conferring the en-

tire inferior jurisdiction on justices of the peace and such municipal or other inferior courts as the legislature should thereafter create for such purpose, and whenever such courts should be called into existence, to the extent deemed requisite by the legislature they would have concurrent jurisdiction with justices of the peace.

If, then, an exclusive character is denied to the jurisdiction conferred upon justices of the peace by a necessary construction of the terms of Section 1, it is clear that it is not competent to enlarge the sense of the subsequent twenty-second section, by means of implication, so as to produce an opposite effect. In the one case the implication rests on the high ground of necessity, for without it the provision cannot take proper effect, while no such ground exists for enlarging the sense of Section 22. It must be concluded then that the grant contained in Section 22 to justices of the peace does not contemplate vesting exclusive jurisdiction in such officers, but that the whole jurisdiction conferred upon justices of the peace is capable of being made concurrent in justices of the peace and such municipal or other inferior court as the legislature may see fit to create.

It may be argued that Section 19, Article I., marks out the proper jurisdiction capable of being exercised by such municipal or other inferior courts as the legislature may see fit to create, and that by reading that section with Section 1, Article IV., the conclusion may be reached that, as it regards the particular jurisdiction specified in Section 19, Article I., concurrent jurisdiction may exist between justices of the peace and municipal or other inferior courts created for that purpose, and as to the residue of the jurisdiction of justices of the peace conferred by Section 22, Article IV., such jurisdiction may be regarded as exclusive in them. In order to reach such a construction it is necessary to regard Section 19, Article I., as intended to define and circumscribe the jurisdiction proper to be exercised by such inferior courts as the legislature might see fit to establish, by limiting such inferior courts to the particular jurisdiction provided for in that section. It is necessary then to examine that section to see if such an intention can be made out from it.

Section 19 is as follows: " All offences less than felony, and in which the punishment does not exceed a fine of $100 or imprisonment for thirty days, shall be tried summarily before a justice of the peace or other officer authorized by law, on information under oath, without indictment or intervention of a grand jury, saving to the defendant the right of appeal; and no person shall be held to answer for any higher crime or offence unless on presentment of a grand jury, except in cases arising in the land and naval service, or in the militia when in actual service in time of war or public danger." The direct object of this section is to regulate the method of making accusations of crime, as appears not only by the language of the section itself, but by its position in the first article of the constitution entitled the "declaration of rights," which is particularly concerned with the rights and immunities of the citizen, as such, as in the familiar *bill of rights.* It recognizes the fact that the jurisdiction of justices of the peace is not exclusive, as its powers are to be concurrently exercised by " a justice of the peace or other officer authorized by law." As we have seen that Section 1, Article IV., vests the whole judicial power so as to exclude all other courts and officers, not therein named or provided for, from participating in the exercise of such power, the language of Section 19 must be read as intended to apply to such *municipal or inferior courts* as the legislature might create for that purpose under the authority of Section 1, Article IV. Section 19, Article I., cannot be regarded as intended to define the jurisdiction proper for such inferior courts as the legislature may create under Section 1 of Article IV. Such is neither the language and import of that section nor the proper province of the article to which that section appertains. It is true it might have the incidental effect of vesting the particular jurisdiction provided for in it, if elsewhere the constitution had failed to effectually vest such powers. Section 19 does, in fact, vest jurisdiction in the inferior courts in excess of that granted by Section 22, Article IV., for under the last named section, justices of the peace had jurisdiction of penal offences less than felony, only where punishable by fines alone, while Section 19 extends that jurisdiction to offences of that class when punishable by im-

prisonment of a limited duration.   *State* v. *Fillebrown* 2 *S. C.*
.404.   While, then, Section 19 does actually vest jurisdiction, on
the principle that words creating a jurisdiction must, if possible,
where necessity requires it, be regarded as vesting it for execu-
tion, yet there is nothing to lead to the conclusion that in fram-
ing Section 19 the scope of the powers of the inferior courts,
other than justices of the peace, was before the minds of its
framers, so as to warrant the inference that they intended it to
operate as an organic disposition of the whole subject of the ju-
risdiction of such inferior courts.   If such could be its effect, the
only jurisdiction that could be exercised by municipal courts or
inferior courts other than justices of the peace would be that
over offences less than felony, where the punishment prescribed
by law was either a fine, not exceeding $100 or imprisonment
not exceeding thirty days, or where such fine or imprisonment
might be in the alternative.   This would not enable such municipal
or other inferior courts to examine and commit for offences of a
higher grade than those cognizable originally before themselves,
a result that cannot be supposed to have been intended by the
constitution.   It would also exclude all proceedings for the en-
forcement of penalties or forfeitures where fines are imposed,
with imprisonment as a° means, merely, of enforcing the payment
of such fines.   It should not be concluded, as a mere inference,
from doubtful language, that the intention was to prevent the
legislature from conferring such powers on municipal courts, or
even upon other inferior courts.   It is, therefore, clear that Sec-
tion 19 was not intended to mark out the jurisdiction of such
courts as the legislature was authorized to create.

· Trial justices courts must be regarded as inferior courts in the
sense of Article IV., Section 1, and entitled to concurrent juris-
diction of the cases included in Section 22, Article IV., embrac-
ing that of bastardy, if the views·already advanced are capable
of being maintained.   It remains to consider what judicial sup-
port these views have received from the adjudicated cases that
have arisen under the constitution.

*State* v. *Fillebrown,* 2 *S. C.* 404.   The exact question in the
present case was not necessarily passed upon in the case just
cited.   The question there was as to the jurisdiction of trial

justices on prosecutions of assault and battery, a jurisdiction properly included in that conferred by Section 19, Article I., under the provisions of the act of 1870, (14 *Stat.* 376, 402,) making that offence punishable in accordance with the limits imposed by Section 19, Article I., where the offence was not of a high and aggravated nature. Chief Justice Moses, in the opinion of the court, places a construction on the words " inferior courts," as contained in Section 1, Article IV., in harmony with the views just expressed. He holds that the intention was that under the name of *inferior courts,* courts might be created by the legislature with jurisdiction and powers concurrent with those of justices of the peace, and not necessarily inferior to them. That case leaves open the question whether cases included in Section 22, Article IV., but not included in Section 19, Article I., are cognizable by any other inferior court than that of justices of the peace within which class the case of bastardy comes. It is also said in that case : " A court in which a justice of the peace presides is an inferior one, and the jurisdiction accorded to it by the constitution is not exclusive because the general assembly may establish *such other inferior courts as may be deemed necessary ;* and the right to do so being permitted by the constitution, such other court is as much a court established by the constitution as is that of a justice of the peace." While this remark was not necessarily demanded by the nature of the question then before the court, yet it derives importance from the use that was made of it in the case that will be next considered.

*Rhodes* v. *Railroad,* 6 *S. C.* 385. The question in that case involved, directly, the inquiry whether the jurisdiction conferred by Section 22, Article IV., on justices of the peace was exclusive of a trial justice's court considered as an inferior court in the sense of Section 1, Article IV. It related to the cognizance of actions *ex delicto* when the damages laid were less than $100. It was there held that such jurisdiction could be exercised by trial justices, and the decision was placed upon the proposition already cited from State *v.* Fillebrown, namely, that the authority to establish inferior courts embraced that of creating courts with jurisdiction concurrent with that of justices of the peace.

It is apparent that the views already expressed have received the judicial sanction of this court, and no ground appears that should weaken the weight of that authority. It must then be concluded that it was competent for the legislature to confer upon the trial justices jurisdiction in cases of bastardy, which brings us to the second question, whether such jurisdiction has been conferred.

It is claimed that Chapter LXVIII. of the general statutes, p. 376, confers original jurisdiction in cases of bastardy upon trial justices. Chapter LXVIII. does not permit the truth of the charge of bastardy when denied by the defendant to be inquired into by the trial justice who has issued the warrant. It is required that in case of the denial of the charge an issue shall be made up and tried in the Court of General Sessions, and if conviction is had upon such issue, the judgment should be rendered by that court. These provisions tend to restrain the functions of the trial justices in such cases to the performance of mere ministerial acts, namely, to issuing the warrant and when the defendant admits his culpability to taking the security provided by law in such cases. By original jurisdiction we must understand power to hear and determine the cases brought within it, and incidentally to decide all questions of law and fact involved in such cases. No such power appears to have been conferred upon trial justices.

The next question presented is, whether it was competent for the Court of General Sessions to take jurisdiction of the case. It is clear that Chapter LXVIII., so far as it confers original jurisdiction in cases of bastardy, confers it upon the Court of General Sessions, as appears from the reasons already stated. Unless, then, there is some constitutional objection to such grant, the General Sessions had competent authority to proceed in the present case.

It is immaterial to the present case whether Chapter LXVIII. of the general statutes is to be regarded as confirming a jurisdiction previously existing in the Court of General Sessions, or as intending an original grant of jurisdiction, for in either case to deprive that court of the jurisdiction thus conferred, it would

be necessary to point to some clause of the constitution having the effect to exclude it from the exercise of such jurisdiction.

The constitution no where, in express terms, excludes the General Sessions from exercising jurisdiction in cases of bastardy or the general jurisdiction to which that case is capable of being referred. If excluded, then, it must be by implication. Such an implication may arise out of two classes of provisions, either out of such as serve to define and limit the jurisdiction of that particular court, or such as grant jurisdiction to some other court in terms inconsistent with its exercise elsewhere. If the implication contended for in this case arises, it must be from provisions conferring jurisdiction on other courts, for nothing appears in the constitution elsewhere, that is, Section 19, Article I., already considered, that can be construed as directly intended to limit and define the jurisdiction of the General Sessions beyond keeping it within the limit of criminal jurisdiction or upon which such an implication can arise. We are then to look to the constitution to see whether jurisdiction in cases of bastardy has been conferred upon some other court so effectively as to imply the exclusion of the Court of General Sessions from the exercise of such jurisdiction. In other words, the inquiry is, has some other court than the General Sessions exclusive jurisdiction in cases of bastardy? Such jurisdiction may be conferred *eo nomine* or as appertaining to a class made the subject of such exclusive jurisdiction. A grant of jurisdiction does not, in itself, carry the idea of an exclusive character. Our constitution is silent where concurrent jurisdiction is intended, and only speaks when the design is that it shall be exclusive. A grant of jurisdiction to a court, in terms exclusive, may properly be regarded as a limitation in express terms of the jurisdiction of all other courts to a corresponding extent. The constitution contains no express grant of exclusive jurisdiction that can possibly include the case of bastardy. The question then arises whether the terms in which jurisdiction is granted in that particular case or in the class of cases to which it appertains, imply the exclusion of all other courts from participating in such jurisdiction. It is impossible to answer fully this question in its special bearing on the case on hand without considering a much wider range of objects.

It necessarily brings into consideration the general scheme of the constitution as it regards the distribution of the various jurisdictions that fall under the head of "judicial power." General language, as well as special, must receive attention in this inquiry. This necessity is specially imposed by the fact that in Section 1, Article IV., a distinction is clearly drawn between the classes of superior and inferior courts, while in Section 22 that particular jurisdiction in bastardy is conferred *eo nomine* on a court appertaining to the class of inferior courts. The argument has to be answered, that as the constitution recognizes the existence of superior and inferior courts, and must, therefore, be regarded as recognizing the corresponding distinction arising from the nature of their jurisdiction, and as it confers jurisdiction in cases of bastardy on a court of inferior jurisdiction that it has impliedly excluded the Court of General Sessions as a court of superior jurisdiction from the exercise of such jurisdiction, upon the idea that superior jurisdiction is proper to the superior courts, and, therefore, exclusive in them, while that which is inferior in its nature is proper to the inferior courts, and, for the like reason exclusive in them.

The sections of the constitution that must be construed together for the purpose just indicated, are the first, eighteenth and twenty-second sections of Article IV. Section 1, Article IV., is as follows : "The judicial power of this state shall be vested in a Supreme Court, in two Circuit Courts, to wit, a Court of Common Pleas having civil jurisdiction, and a Court of General Sessions with criminal jurisdiction only, in Probate Courts and in justices of the peace. The general assembly may also establish such municipal and other inferior courts as may be deemed necessary." Section 18 is as follows: "The Court of General Sessions shall have exclusive jurisdiction in all criminal cases that shall not be otherwise provided for by law." * * * Section 22 is as follows : "Justices of the peace, individually, or two or more of them jointly, as the general assembly may direct, shall have original jurisdiction in cases of bastardy, and in all matters of contract, and actions for the recovery of fines and forfeitures where the amount claimed does not exceed $100, and such jurisdiction as may be provided by law in actions *ex*

*delicto,* where the damages claimed do not exceed $100, prosecutions for assault and battery and other penal offences less than felony, punishable by fines only."

We have already considered whether the grant of jurisdiction in cases of bastardy excludes other inferior courts, such as trial justices, and it remains to be considered whether it excludes the Court of General Sessions. It is very clear that if the whole question depended upon the force of the language of Section 22, the conclusion that has been reached as it regards trial justices would contain its entire solution. But there remains for examination certain considerations growing out of the force of Section 1, Article IV., in so far as it draws a distinction between superior and inferior courts. Reverting to the argument that has been mentioned as needing an answer, it may be observed that it does not follow that because the constitution may have indicated the jurisdiction proper to the inferior courts, and thus impliedly recognized the jurisdiction proper to the superior courts, that it is hence to be inferred that such jurisdictions are to be regarded as exclusive, simply because respectively *proper* to the courts possessing them. No such precise distribution is possible as that which would assign to each class of courts that which is proper to it, and in its nature *improper* for any other court. It is in the nature of the administration of justice that jurisdiction should overlap and be, to a large extent, concurrent between courts possessing different powers and proceeding by different methods. But if such a distribution was possible, the terms *superior* and *inferior,* for the want of the means of rendering them precise, would not serve the purpose of indicating such a distribution. It would follow from this that what is *proper* for one court is not necessarily *improper* for another, hence no implication in favor of the exclusive character of any jurisdiction can arise simply from the fact that such jurisdiction is proper to the court upon which it has been conferred.

The delegation of "judicial power" made by Section 1, Article IV., is necessarily exhaustive, for the judicial power mentioned means the *whole* judicial power when, as is here the case, nothing appears to give it a less extensive signification, and the effect of vesting the whole judicial power is to leave nothing

appertaining to such power capable of being vested in any other manner. It would therefore follow, as has been noticed in another place, that it is not competent for the legislature to create any other courts to participate in the exercise of the judicial power of the state than such as are either named or provided for in Section 1, Article IV. The grant may, consistently with the terms employed, be regarded as a grant *in solido* made to the courts indicated, for the purpose of excluding all other courts, and yet not operate as a partition of such judicial power among such courts. The question of partition is one of intention that must, as has been said, be reached, if at all, in the present case by implication.

The first consideration to be adverted to as bearing on the question of the office intended for Section 1, Article IV., and tending to exclude the idea that it was intended by that section to mark out the proper office for the several courts and classes of courts provided for in it, is the fact that this purpose in regard to each of these courts and classes of courts is accomplished in other independent sections. The jurisdiction of the Supreme Court is defined in Section 4, that of the Common Pleas in Section 15, that of the General Sessions in Section 18, that of the Probate Courts in Section 20, and that of justices of the peace in Section 22. While the jurisdiction of the inferior courts, though not defined fully as such, is treated of in Section 19, Article I. It is to these sections last named that we must look, in the first instance, to find the partition of the judicial power intended to be made by the constitution, and no necessity exists for resorting to Section 1 for such purposes.

It is clear that in a limited aspect, Section 1 does make a partition of power. It confers upon the Common Pleas civil jurisdiction and upon the General Sesssions criminal jurisdiction. Here is an instance in which jurisdiction is distributed in a manner that implies exclusion. It recognizes a fundamental division of jurisdiction, and separately and distributively vests the several kinds each in a court of a particular designation. Under such circumstances for the Court of Common Pleas to assume the exercise of criminal administration, or for the Court of General Sessions to exercise civil jurisdiction would contra-

dict the terms in which their jurisdictions are respectively conferred, and thus violate the purpose of the constitution. No such recognition of the divisible nature of jurisdiction is found in Section 1, Article IV., in its application to the Supreme Court, the Probate Courts and to justices of the peace, nor any line drawn by which their jurisdiction can be distinguished from that divided between the Common Pleas and General Sessions, nor by which these courts can be classified as superior and inferior. It is only when the subject of creating *municipal and other inferior courts* is dealt with that the distinction appears. Whatever difference the constitution makes in the fundamental character of the Supreme Court, the Common Pleas and General Sessions, the Probate Courts and justices of the peace, apart from the distribution of civil and criminal jurisdiction, as between the two Circuit Courts, is accomplished altogether by those sections that severally define the jurisdictions of these courts respectively. In an indirect sense, Section 1 may be regarded as operating to establish a particular jurisdiction in the Common Pleas and General Sessions. The other sections of this article that define and limit the jurisdiction of the Supreme Court, the Probate Courts and justices of the peace, leave a residuum of jurisdiction not granted away, and this necessarily appertains to the remaining courts whose jurisdictions are not limited either by their own nature or by any provision of the constitution. As then, under Section 1, no courts other than those enumerated can be created except for the exercise of inferior powers, it follows that it is not competent for the legislature to divest the Courts of Common Pleas and General Sessions of that part of their jurisdiction that answers to the designation *superior*.

It is evident from the foregoing that no general partition of jurisdiction was intended by Section 1, Article IV., and that as between the Courts of General Sessions and justices of the peace it furnishes no test of what matters may be concurrent between the two courts.

It is necessary then to inquire whether competency has been denied to the General Sessions by Section 22, Article IV., as it regards any of the matters brought within the jurisdiction of justices of the peace by that section. Is there anything in the

nature of a grant of jurisdiction to an inferior court that necessarily removes such jurisdiction from the superior courts ? The object of creating inferior courts is two fold : first, to afford a simple and inexpensive mode of proceeding in cases of small magnitude; and, second, to relieve the superior courts of the burden of small suits. In practice this result has been attained by opening inferior courts in such cases, and denying costs and expenses incurrred in such prosecutions in a superior court where a remedy might have been found in an inferior court. This object rests on prudential grounds and does not touch the fundamental nature of grants of jurisdiction. There is no recognized principle by which a grant to an inferior out of the jurisdiction previously exercised by a court of general original jurisdiction can operate as an exclusion of such superior courts unless made so by the terms of the grant. If the existence of concurrent jurisdiction could be regarded in no other light than as the consequence of imperfection in the distribution of jurisdiction, there might be some ground for assuming the possibility of such a principle, but, so far from that being the case, the concurrence of jurisdictions, as has been already said, is a positive aid to the administration of justice. On the other hand, our constitution undertakes to say when the jurisdiction granted by it shall be exclusive in many instances, and the absence of any expression of an intent that the jurisdiction conferred upon justices of the peace shall exclude the Courts of Common Pleas and General Sessions should be referred to the absence of any such intent, and it is manifestly improper to supply words omitted, when to do so confers characteristics or a grant of jurisdiction that do not appertain to the nature of such grants, and with no other justification than a theoretical objection to concurrent jurisdiction between a superior and inferior court. It follows that the grant of jurisdiction in cases of bastardy, in Section 22, does not operate to deprive the Court of General Sessions of jurisdiction in such cases.

Section 18 has already been construed by this court in *State* v. *Simmons,* 4 *S. C.* 72, as not preventing the Court of General Sessions from retaining jurisdiction in certain criminal cases, notwithstanding the creation of a court by the legislature for

the purpose of exercising such jurisdiction exclusively. The conclusion of the court in that case that the legislature could not constitutionally take away any part of the general criminal jurisdiction of the Court of General Sessions may be referred to the ground already presented by assuming that the criminal court of Charleston, as constituted by the act of 1872, did not answer the description of courts which the legislature, under Section 1, Article IV., was competent to create, inasmuch as it was intended to encroach upon the superior jurisdiction of the General Sessions, and, therefore, was not an inferior court. The eighteenth section was evidently intended to exclude all other courts from participating in the criminal jurisdiction in the General Sessions, except where, under the constitution itself, or some law passed in conformity therewith, competent to take such jurisdiction as might exist or be created, in which case such jurisdiction would be concurrent with that of the General Sessions, for the want of words excluding the General Sessions in any case, as the condition in that section operates alone on the grant of *exclusive* jurisdiction, and not upon the general competency of the General Sessions to take concurrent jurisdiction where it is not entitled to exclusive.

The foregoing construction is in harmony with all the cases decided in this court.

*McIver* v. *Townsend,* 2 *S. C.* 1. That case illustrates the operation of that portion of Section 1, Article IV., that distributes civil and criminal jurisdiction as between the Courts of Common Pleas and General Sessions. In the section conferring jurisdiction in the Common Pleas, the writ of *mandamus* is mentioned as part of that jurisdiction. This was ground for holding that the constitution recognized the change that *mandamus* had undergone in its practical use, being changed from a criminal to a civil proceeding, and that thus it passed to the Common Pleas and out of the General Sessions as a civil remedy.

*Burge* v. *Willis,* 5 *S. C.* 212. That case held that notwithstanding Section 22, of the constitution, conferred upon justices of the peace original jurisdiction "in all matters of contract" where the amount claimed did not exceed a certain sum, yet the Common Pleas did not thereby lose jurisdiction over such cases.

*Rhodes* v. *Railroad*, 6 *S. C.* 385. That case holds that the jurisdiction conferred by Section 22, on justices of the peace, is not exclusive so as to prevent the legislature from conferring such jurisdiction on such inferior courts as it might see fit to create under the authority for that purpose conferred by Section 1, Article IV.

*State* v. *Harper*, 6 *S. C.* 464. The exclusion of the Court of General Sessions from a portion of its criminal jurisdiction was attempted to be worked out from the provisions of Section 19, Article I., relative to certain summary proceedings. No intimation is given in that case of any exclusion of the General Sessions as the consequence of the jurisdiction conferred on justices of the peace by Section 22.

*Walker* v. *Russell*, 10 *S. C.* 82. The same general mode of reasoning was employed in that case to reach the conclusion that the grant of jurisdiction to Probate Courts in Section 20, Article IV., was not in its character exclusive.

It must be concluded that the Court of General Sessions is not excluded by the constitution from taking jurisdiction in cases of bastardy.

The sentence of the General Sessions was not conformable to law. The statute provides that on conviction for bastardy, the defendant "shall be required to give the security or recognizance hereinbefore provided, and on default thereof shall be liable to execution as are defendants convicted of misdemeanors." The sentence in the present case was "that defendant, Abraham Glenn, give bond in the sum of $300 for the maintenance of the child until it reaches the age of twelve years, and in default thereof, be imprisoned in the county jail for the period of six months, and execution issue against defendant's property." The statute confers no authority to impose punishment for a fixed period, or in the nature of alternative punishment. The judgment of the General Sessions must be set aside and the case remanded for such proceedings as are by law provided.

MCIVER and MCGOWAN, A. J.'s, concurred.